Filed 1/13/15  P. v. Jimenez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039607 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1230586) |
| v. | |
| JESSE JOSEPH JIMENEZ, | ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |
| Defendant and Appellant. | |

THE COURT:

It is ordered that the opinion filed herein on December 29, 2014, be modified in the following particulars:

In the sentence commencing at the first paragraph of page 3 with "The trial court" and ending at line 4 of page 3 with "section 288, subdivision (a)," the word "three" is replaced with "two," so that the sentence reads as follows:

The trial court admitted into evidence certified copies of the court records in two cases that showed defendant's prior convictions for violations of section 288, subdivision (a).

There is no change in judgment.

The petition for rehearing is denied.

_____
BAMATTRE-MANOUKIAN, J.


_____
ELIA, ACTING P.J.


_____
MIHARA, J.

Filed 12/16/14  P. v. Jimenez CA6 (unmodified version)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JESSE JOSEPH JIMENEZ,<br><br>    Defendant and Appellant. | H039607<br>(Santa Clara County<br>Super. Ct. No. C1230586) |

## I.  INTRODUCTION

After a jury trial, defendant Jesse Joseph Jimenez was convicted of one felony count of committing lewd or lascivious acts on AL., who was under the age of 14 years (Pen. Code, § 288, subd. (a)),[1] and one felony count of annoying or molesting a child under the age of 18 (§ 647.6, subd. (c)(2)).  The trial court found true the allegations that defendant had two prior serious felony convictions (§ 667, subd. (a)) and five prior convictions that qualified as strikes (§§ 667, subds. (b)-(i), 1170.12).  The court sentenced defendant to a total term of 75 years to life in the state prison.

On appeal, defendant contends that (1) there was insufficient evidence to prove the conviction for annoying or molesting a child under the age of 18 (§ 647.6, subd. (c)(2)); (2) the trial court failed to provide "legally balanced and correct" answers to two jury

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

questions; (3) the trial court erred in admitting evidence of defendant's sex offender parole conditions; (4) the jury instructions on the elements of the section 288, subdivision (a) offense misstated the law; (5) the trial court failed to give a limited purpose instruction for the Evidence Code section 1108 evidence; (6) the trial court erred by instructing on an alternative theory of unanimity; (7) the trial court gave an improper *Allen v. United States* (1896) 164 U.S. 492 (*Allen*) instruction to a deadlocked jury; (8) the prosecutor's misconduct during closing argument requires reversal; and (9) the cumulative impact of these errors requires reversal. For the reasons stated below, we find no merit in defendant's contentions and therefore we will affirm the judgment.

Defendant has also filed a petition for writ of habeas corpus, which this court ordered considered with the appeal. We have disposed of the habeas petition by separate order filed this day. (See Cal. Rules of Court, rule 8.387(b)(2)(B).)

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Information*

The information filed in October 2012 charged defendant with the felony offenses of lewd or lascivious act on a child under 14 (§ 288, subd. (a); count 1) and annoying or molesting a child under age 18 with two prior felony convictions of violating section 288 (§ 647.6, subd. (c)(2); count 2). The alleged victim in both counts was AL., a 12-year-old girl. The offenses allegedly occurred between July 1, 2011, and September 1, 2011.

The information further alleged that defendant had five prior violent or serious felony convictions of lewd and lascivious acts on a minor under 14 (§ 288, subd. (a)) that qualified as a strike within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12) and two prior convictions of of lewd and lascivious acts on a minor under 14 (§ 288, subd. (a)) that qualified as a serious felony (§ 667, subd. (a), § 1192.7).

### B. *Jury Trial*

The case proceeded to a jury trial in December 2012. The following is a summary of the evidence presented at the trial.

### 1. Documentary Evidence

The trial court admitted into evidence certified copies of the court records in three cases that showed defendant's prior convictions for violations of section 288, subdivision (a). During motions in limine, defendant admitted the two prior felony convictions of violating section 288 that were alleged in count 2.

Also admitted into evidence was a certified copy of defendant's sex offender parole conditions, which state that defendant was released on parole in May 2010 for a period of three years. The parole conditions included a no-contact provision that (1) prohibited contact with anyone under the age of 18; (2) prohibited contact with females between the ages of 12 and 18 years; (3) required defendant to immediately inform his parole agent "regarding any contact with a minor whether it is 'accidental' or not"; and (4) prohibited loitering within 100 yards of the perimeter of places where children congregate.

### 2. Trial Testimony

#### *Prior Uncharged Offenses*

Two witnesses, S. Doe and A. Doe, testified regarding defendant's prior uncharged offenses pursuant to Evidence Code section 1108. In pertinent part, Evidence Code section 1108, subdivision (a) provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." Thus, Evidence Code section 1108 "authorizes the admission of evidence of a prior sexual offense to establish the defendant's propensity to commit a sexual offense, subject to exclusion under Evidence Code section 352." (*People v. Lewis* (2009) 46 Cal.4th 1255, 1286.)

**S. Doe**

In 1992, S. Doe was 14 years old and living with her father and other family members in San Jose. Her father was affiliated with a church that focused on rehabilitating drug addicts and gang members. Defendant and S. Doe's father were friends and together ran one of the church's group homes.

An incident involving S. Doe and defendant occurred one night in 1992 while they were playing dominoes. Everyone else in the household was asleep. When S. Doe went to the refrigerator, defendant came up behind her and kissed the back of her neck. He then turned her around and gave her a French kiss on the lips.

After that incident, defendant came into S. Doe's bedroom, woke her up, kissed her, and had intercourse with her. S. Doe later had sex with defendant on more than 20 occasions. S. Doe was a very shy and withdrawn 14-year-old who was afraid to tell anyone about what defendant was doing, although she knew it was wrong. Defendant also took S. Doe's Bible and underlined passages about intimacy and husbands and wives. On other occasions, defendant would drive by her school or sit and watch from a school parking area.

Sometime in 1992, S. Doe moved to Southern California to live with her mother. Defendant found out where S. Doe was living and came down every weekend to have sex with her. He would have her sneak out her window and they would go to a motel or his car. S. Doe stopped having sex with defendant when her mother found out, confronted defendant, and told him to leave her alone.

**A. Doe**

A. Doe testified that she first met defendant at church in 1994, when she was 10 years old. Defendant was the director of a church ministry home where A. Doe's father was undergoing a rehabilitation program. After A. Doe's father completed the program, he continued to see defendant frequently at church and in the Doe home.

4

In February 1995, A. Doe went on a family trip with her parents, her five siblings, and defendant to visit her grandparents in Southern California. At that time, A. Doe was 12 years old. On the first night of the visit, A. Doe slept on the couch in her grandparents' living room. Defendant slept in the guest bedroom. After A. Doe fell asleep, defendant woke her up and asked her to turn the television off. Defendant then followed her back to the couch, bent over her, and touched her breast, and tried to kiss her. Later, during the same visit, defendant asked A. Doe to help him iron a shirt. After she showed him what to do, he put his arms around her waist and kissed her neck.

Another incident occurred after A. Doe and her family returned to their home in San Jose. While A. Doe was asleep in the bottom bunk bed, defendant came into the bedroom and grabbed her breasts. A. Doe moved his hand off and turned away from him. Defendant tried unsuccessfully to pull her back and eventually left the room.

The last incident involving defendant occurred during Christmas of 1995. Defendant offered to buy A. Doe a pair of shoes. A. Doe's older brother was supposed to go with them on the shoe shopping trip, but defendant drove off without him. Defendant stopped at a McDonald's, opened the door for A. Doe, and tickled her on her stomach.

In 1996, A. Doe told her mother about defendant had been doing to her and the police became involved.

### *Grooming Expert*

Robert Dillon, a City of San Jose police officer, testified as an expert witness. He has a substantial amount of training and experience in child molestation cases, including the sex offender behavior called grooming. Officer Dillon stated that grooming is a technique used by sex offenders to develop a relationship with a potential victim.

Officer Dillon explained that the grooming technique involves a series of behaviors that may include the following: the sex offender placing himself in an environment where potential victims may be found; spending an inordinate amount of time with a potential child victim; showering the potential child victim with attention and

5

gifts; making the child feel special in front of his or her peers; ingratiating himself as a father or brother figure where the potential victim does not have a strong family environment; gradually isolating the potential child victim; and touching the child in a way that appears innocent, such as accidental touching or wrestling. Family members may be aware of these behaviors but may excuse them.

Officer Dillon was not involved in the present case and did not express any opinions about defendant.

### *The Charged Offenses*

In 2011, B. Doe was the single father of three children, including an 18-year-old boy, a 16-year-old boy, and a 12-year-old girl, AL. B. Doe first met defendant at a men's fellowship meeting at a church.

In March 2011, B. Doe and defendant attended a Bible study group at the home of church member A.V. The group decided that B. Doe and defendant would make a presentation at the next Bible study. B. Doe invited defendant to his home to prepare their presentation. After that, defendant often visited the Doe home and B. Doe and defendant became friends. During his visits, defendant mainly socialized with AL. He played card games more often with AL. than with her brothers. Defendant hugged AL. on more than one occasion, but she did not think anything about it.

An incident occurred in July 2011 when defendant was playing cards with AL. in the kitchen. B. Doe was in the living room sitting on the couch about 15 feet away from them. While B. Doe was watching television he heard defendant say to AL., " 'That's okay.' " He then saw defendant slowly and deliberately swipe his hand down AL.'s forearm to her hand while gazing into her eyes.

After that incident, B. Doe told his sons that he did not want defendant to be alone with AL. Due to B. Doe's work schedule, his children were home alone from the time they got out of school at 2:30 p.m. until he arrived home at 6:00 p.m. or 7:00 p.m. On two occasions, B. Doe arrived home to find groceries that he had not bought. AL.

6

recalled that defendant had brought the groceries to their home. On another occasion, B. Doe was home early from work when he heard a knock on the door. B. Doe looked through the peephole but could not see anyone. He opened the door and saw defendant standing to the side holding groceries. Defendant had not asked permission to visit and B. Doe told him he did not need groceries.

During a visit to the Doe home, defendant mentioned that he wanted to buy AL. a pair of shoes. B. Doe agreed. One day after church, defendant showed an advertisement to B. Doe and told him that he would like to get shoes for AL. that were on sale. B. Doe started to feel uncomfortable about the time that defendant was spending with AL. He told defendant that he could buy shoes for his sons, but defendant declined. B. Doe also told defendant that he had already bought AL. a pair of shoes.

Soon after that conversation with B. Doe, defendant came to the house with a pair of pink Converse tennis shoes for AL. Those were the same kind of shoes that B. Doe had been buying for her. AL. tried on the shoes, but they did not fit. Defendant took the shoes back and returned with the same pair in a different size. While AL. was sitting down and trying the shoes on, defendant put his hand flat on her thigh for a few seconds, which made her feel "weird."

Around Labor Day of 2011, an incident occurred during a barbecue hosted by A.V. and his wife at their home. B. Doe, his children, and defendant attended the barbecue. A.V.'s dog had puppies and B. Doe had previously told AL. that she could not have one. While B. Doe was cooking, he overheard a conversation between defendant and AL. Defendant told AL. that he could get the puppy, it would live at AL.'s house and belong to both of them, and he would pay for its food. Defendant also told AL. that he would visit the puppy at her house. B. Doe then announced to everyone that they were not getting a puppy.

A.V. recalled other incidents involving defendant and AL. that struck him as unusual. At a car show, A.V. saw defendant offer to bring AL. a plate of food. AL.

7

declined and A.V.'s wife jumped in and said she would get a plate for AL. On another occasion, A.V. and his wife were watching television with AL. and defendant. AL. was sitting on the arm of A.V.'s chair. Defendant was standing behind them and tapping AL. with his feet. A.V.'s wife saw the tapping and told AL. to come sit with her. A.V. also saw defendant put his hand on AL.'s shoulder when they were playing cards.

B. Doe was concerned after hearing the conversation between defendant and AL. about the puppy. He mentioned his concerns to A.V. and they conferred with their pastor. The pastor went on the Megan's Law website[2] and they discovered that defendant was an offender. Later, B. Doe called the police and they came to the house to interview him and AL.

### C. *Jury Verdict and Findings on Prior Convictions*

On December 7, 2012, the jury rendered its verdict finding defendant guilty on both felony counts, lewd or lascivious act on a child under 14 (§ 288, subd. (a); count 1) and annoying or molesting a child under age 18 with two prior felony convictions of violating section 288 (§ 647.6, subd. (c)(2); count 2).

A court trial on the prior conviction allegations was held on December 14, 2012. The trial court found true the allegations that defendant had five prior violent or serious felony convictions of lewd and lascivious acts on a minor under 14 (§ 288, subd. (a)) that qualified as a strike within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12) and two prior convictions of of lewd and lascivious acts on a minor under 14 (§ 288, subd. (a)) that qualified as a serious felony (§ 667, subd. (a), § 1192.7).

---

[2] "In 2004, the Legislature enacted section 290.46, a statute commonly known as Megan's Law. (Stats.2004, ch. 745, § 1.) 'California's Megan's Law provides for the collection and public disclosure of information regarding sex offenders required to register under section 290.' [Citation.] Section 290.46 requires that the Department make available to the public on an Internet Web site information concerning certain registered sex offenders." (*Doe v. Brown* (2009) 177 Cal.App.4th 408, 419-420.)

**D.** *Sentencing*

The sentencing hearing was held on April 26, 2013. After denying defendant's motion pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 to dismiss the prior strike convictions, the trial court imposed a state prison term of 75 years to life on count 1 (violation of section 288, subd. (a)), consecutive to a ten-year term pursuant to sections 667.61, subdivisions (a) and (d) and section 667, subdivision (e)(2)(A)(i). The court stayed the sentence of 25 years to life on count 2 (violation of section 647.6, subd. (c)(2)) pursuant to section 654.

## III. DISCUSSION

### A. *Insufficient Evidence: Count 2*

Defendant contends that the evidence was insufficient to prove a violation of section 647.6, subdivision (c)(2) because defendant's conduct with respect to AL. was not "objectively and unhesitatingly disturbing, regardless of his subjective intent." Defendant does not challenge the sufficiency of the evidence as to count 1, violation of section 288, subdivision (a). We will begin our evaluation of defendant's contention with the standard of review.

#### 1. Standard of Review

"It is the prosecution's burden in a criminal case to prove every element of a crime beyond a reasonable doubt. [Citation.] To determine whether the prosecution has introduced sufficient evidence to meet this burden, courts apply the 'substantial evidence' test. Under this standard, the court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses *substantial evidence*— that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.] The focus of the substantial evidence test is on the *whole* record of evidence presented to the trier of fact, rather than on ' "isolated bits of evidence." ' [Citation.] The substantial evidence test applies . . . when an appellate court is reviewing on appeal the sufficiency

of the evidence to support a conviction[.]"  (*People v. Cuevas* (1995) 12 Cal.4th 252, 260-261 (*Cuevas*); see also *Jackson v. Virginia* (1979) 443 U.S. 307, 315-319; *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

### 2.  Section 647.6 Elements

Subdivision (a)(1) of section 647.6 provides:  "Every person who annoys or molests any child under 18 years of age shall be punished by a fine not exceeding five thousand dollars ($5,000), by imprisonment in a county jail not exceeding one year, or by both the fine and imprisonment."

Pursuant to subdivision (c)(2) of section 647.6, an offense under section 647.6, subdivision (a) is deemed a felony if the defendant has a prior conviction for one of the offenses enumerated in section 647.6, subdivision (c)(2), which include a conviction under section 288.

The California Supreme Court has instructed that "section 647.6, subdivision (a), does not require a touching [citation] but does require (1) conduct a ' "normal person would unhesitatingly be irritated by" ' [citations], and (2) conduct ' "motivated by an unnatural or abnormal sexual interest" ' in the victim [citations]."  (*People v. Lopez* (1998) 19 Cal.4th 282, 289 (*Lopez*).)

"[T]he words 'annoy' and 'molest' in former section 647a (now section 647.6, subdivision (a)) are synonymous and generally refer to conduct designed to disturb, irritate, offend, injure, or at least tend to injure, another person.  [Citations.]"  (*Lopez*, *supra*, 19 Cal.4th at p. 289.)  "[T]o determine whether the defendant's conduct would unhesitatingly irritate or disturb a normal person, we employ an *objective* test not dependent on whether the child was in fact irritated or disturbed.  [Citations.]"  (*Id*. at p. 290.)

### 3.  Analysis

Defendant insists that the evidence regarding the five acts in which he touched AL. (swiping his hand down her arm during a card game, placing his flat hand on her

10

thigh while she tried on shoes, tapping his foot against her, putting his hand on her shoulder during a card game, and hugging her) and evidence of the five acts that did not involve touching AL. (bring her a plate of food at the car show, delivering bags of groceries to her home, buying her a pair of shoes, offering to buy her a puppy to be kept at her home, and playing card games with the Doe children) are insufficient to prove a violation of section 647.6. Defendant asserts that his conduct occurred in the presence of others and that neither B. Doe nor Velasquez were concerned about defendant's conduct until they found defendant on the Megan's Law website. Defendant argues that no reasonable trier of fact could find that his conduct was "objectively and unhesitatingly disturbing."

The People point to certain instances of defendant's conduct as objectively offensive conduct under the circumstances, including slowly and deliberately stroking AL.'s arm and gazing into her eyes while playing cards, touching her thigh for several seconds while she tried on shoes, and offering to buy her a puppy that they would share after her father had refused to get her one.

We note that defendant does not challenge the sufficiency of the evidence with regard to two of the three elements of the section 647.6 offense, a victim under the age of 18 and a sexual motivation for the defendant's conduct. (See *Lopez*, *supra*, 19 Cal.4th at p. 289.) Defendant also admitted the allegations that he had two prior convictions for one of the offenses enumerated in section 647.6, subdivision (c)(2). Defendant argues only that the evidence was insufficient to prove the element that his conduct was unhesitatingly irritating or disturbing to a normal person under an objective test. (See *Lopez*, *supra*, at p. 290.)

Having reviewed the trial evidence in its entirety, we determine that defendant's conviction of violating section 647.6, subdivision (c)(2) is supported by substantial evidence such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (See *Cuevas*, *supra*, 12 Cal.4th at p. 260.) The evidence of the

11

incidents in which defendant touched AL. shows that the touching would be objectively and unhesitatingly irritating or disturbing to a normal person. In particular, we find the incidents in which (1) defendant slowly and deliberately swiped his hand down the arm of AL., a 12-year-old girl, from her elbow to her hand while they were playing cards; (2) placed his flat hand on her thigh while she was trying on the pink Converse tennis shoes he had bought for her contrary to her father's wishes; and (3) tapped her with his feet while they were watching television, all constitute conduct that would be unhesitatingly irritating or disturbing to a normal person.

In short, this is not a case where the evidence was insufficient to prove a violation of section 647.6 because the evidence showed nothing "more than friendly noncriminal activity on the part of defendant toward the girl." (*People v. Carskaddon* (1957) 49 Cal.2d 423, 426 [construing former section 647a, subdivision (1)].) We therefore find no merit in defendant's contention that the evidence was not sufficient to prove a violation of section 646.7, subdivision (c)(2).

**B. *Responses to Jury Questions***

Defendant contends that the judgment must be reversed because the trial court failed to provide "legally balanced and correct" answers to two jury questions.

### 1. Proceedings Below

After the jury began deliberating, the trial court stated the following on the record outside the presence of the jury:

"[THE COURT]: We have received two notes from the jury, notes number one and two. And we've had discussions in chambers. [¶] Is there anything that needs to be memorialized on behalf of the defendant? I prepared the responses based on our discussions. So, is there any objection or anything - -

"[DEFENSE COUNSEL]: No.

"THE COURT: - - That needs to be added with respect to the response to question number one or question number two?

12

"[THE PROSECUTOR]: No thank you.

"[DEFENSE COUNSEL]: No, Your Honor.

"THE COURT: Very well. All right. Then I'll sign these and put the time on it. And the deputy will take it back to the jury room."

Jury note No. 1, dated December 6, 2012, states: "CALCRIM 1122 Count 2 Point 2 ('A Normal person,' without hesitation, would have been disturbed, irritated, . . . .' [)]" [¶] DOES THE NORMAL PERSON HAVE TO BE THE VICTIM? [¶] (Can the Father or friend [A.V.] be the normal person disturbed . . . . . by the defendant's conduct)"

The trial court's response to jury note No. 1 states: "Does the normal person have to be the victim? [¶] Answer: No [¶] Can the father or friend be the normal person . . . ? [¶] Answer: 'A normal person' is an objective standard."

Jury note No. 2 states: "Can we know the dates of the previous 2 convictions and the length of incarceration after those? [¶] Thank you!"

The trial court's response to jury note No. 2 states: "Please refer to exhibits 4, 5 & 6."

Exhibit 4 includes the information, amended information, a minute order, and the abstract of judgment (showing a conviction of violating section 288, subd. (a) and a total term of eight years) in *People v. Jimenez* (Super. Ct. Santa Clara County, 1997, No. 192298). The victim in that case was A. Doe.

Exhibit 5 includes the felony complaint, two minute orders, and the abstract of judgment (showing convictions of five counts of violating section 288, subd. (a) and one prior section 288, subd. (a) conviction and a total term of 16 years) in *People v. Jimenez* (Super. Ct. Santa Clara County, 1998, No. 204087). The victim in that case was J. Doe, who did not testify at trial.

Exhibit 6 includes fingerprint cards and booking photo in *People v. Jimenez* (Super. Ct. Santa Clara County, 1998, No. 204087).

13

## 2. Applicable Law

A trial court's response to jury questions is governed by section 1138. That statute provides: "After the jur[ors] have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called." (§ 1138.)

"[T]he statute imposes a 'mandatory' duty to clear up any instructional confusion expressed by the jury." (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1212; *People v. Moore* (1996) 44 Cal.App.4th 1323, 1331 (*Moore*) [court must "help the jury understand the legal principles it is asked to apply"].) However, "[t]his does not mean the court must always elaborate on the standard instructions. Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information. [Citation.] Indeed, comments diverging from the standard are often risky. [Citation.]" (*People v. Beardslee* (1991) 53 Cal.3d 68, 97.)

"An appellate court applies the abuse of discretion standard of review to any decision by a trial court to instruct, or not to instruct, in its exercise of its supervision over a deliberating jury." (*People v. Waidla* (2000) 22 Cal.4th 690, 745-746.)

### 3. Analysis: Jury Note No. 1

Defendant acknowledges that defense counsel did not object to the trial court's response to jury note No. 1, but asserts that no objection was necessary to preserve this claim of instructional error for review. The People do not argue that this claim was forfeited. We will therefore proceed to consider the merits of defendant's claim.

According to defendant, "the court was obligated to tell the jury that the phrase 'normal person' meant that the jury must determine whether a 'reasonable person' in the

14

child's position, without regard to [defendant's] intent, would have been unhesitatingly offended."  Defendant argues that the trial court's response to jury question  No. 1 was prejudicial because "[i]t left the jury with the erroneous impression that [B. Doe's] opinion could be considered while [AL.'s] opinion could not."  Further, defendant argues that the response constitutes a federal due process violation because it cannot be determined whether defendant was convicted under the correct objective legal standard.

The People contend that the trial court properly responded to jury note No. 1 because the court correctly responded," '[N]o,' " to the first question of whether a normal person had to be the victim.  The court's response to the second question in jury note No. 1—whether the father or friend A.V. could be the normal person—directed the jury's attention to the correct standard, the People contend, because the court stated, " ' "A normal person" is an objective standard.' "  The People also assert that the original instructions on the legal elements of the section 647.6 offense were full and complete.

We find that the trial court did not abuse its discretion under section 1138 in responding to jury note No. 1 because the court's responses were legally correct.  The California Supreme Court has instructed that with regard to the offense of violating section 647.6, "to determine whether the defendant's conduct would unhesitatingly irritate or disturb a normal person, we employ an *objective* test not dependent on whether the child was in fact irritated or disturbed.  [Citations.]" (*Lopez*, *supra*, 19 Cal.4th at p. 290.)  Under *Lopez*, the trial court correctly stated the law when the court answered, "No," to the question of whether a normal person had to be the victim.  The court also correctly answered under *Lopez* that, " 'A normal person' is an objective standard," in response to the jury's question of whether the father or friend A.V. could be the normal person.

We are not convinced by defendant's argument that the trial court's response to jury note No. 1 was prejudicial because the response left the jury with the erroneous impression that B. Doe's opinion could be considered while AL.'s opinion could not be

15

considered. The court's response to jury note No. 1 clearly and correctly told the jury that they should apply an objective standard in determining whether a "normal person" would have been unhesitatingly irritated or disturbed by defendant's conduct.

Moreover, the jury instructions on the section 647.6 charge were full and complete. The jury instruction given on the charge of violating section 647.6 states: "To prove that the defendant is guilty of this crime, the People must prove that: [¶] One, the defendant engaged in conduct directed at the child; [¶] two, a normal person, without hesitation, would have been disturbed, irritated, offended, or injured by the defendant's conduct; [¶] three, the defendant's conduct was motivated by an unnatural or abnormal sexual interest in the child; [¶] and [¶] four, the child was under the age of 18 years at the time of the conduct. [¶] It is not necessary that the child actually be irritated or disturbed. It is also not necessary that the child actually be touched. [¶] It is not a defense that the child may have consented to the act." We presume that jurors are "able to understand and correlate instructions and are further presumed to have followed the court's instructions. [Citation.]" (*People v. Sanchez* (2001) 26 Cal.4th 834, 852 (*Sanchez*).)

For these reasons, we find that the trial court did not abuse its discretion in responding to jury note No. 1. To the contrary, the court's responses regarding the jury's question about the "normal person" instruction for the section 647.6 offense complied with the court's "primary duty to help the jury understand the legal principles it is asked to apply. [Citation.]" (*Moore*, *supra*, 44 Cal.App.4th at p. 1331.)

### 4. Analysis: Jury Note No. 2

Jury note No. 2 states: "Can we know the dates of the previous 2 convictions and the length of incarceration after those? [¶] Thank you!" The trial court responded, "Please refer to exhibits 4, 5 & 6." Defendant contends that the trial court's failure to admonish the jury to disregard the penalty information in exhibits 4, 5 and 6 allowed the jury to improperly consider possible punishment and therefore constitutes prejudicial

16

error. In response, the People argue that the trial court did not abuse its discretion under section 1138 because the jury was instructed two times to reach its verdict without consideration of punishment.

Defendant acknowledges that defense counsel did not object to the trial court's response to jury note No. 2, but asserts that defense counsel's prior objections to the admission of the prior conviction evidence was sufficient to preserve the issue for review. The People do not argue that this issue was forfeited. We will therefore proceed to consider the merits.

Our review of the record shows that the trial court gave the following preliminary instruction: "You must reach your verdict without any consideration of punishment." After closing arguments, the trial court again instructed the jury that "You must reach your verdict without any consideration of punishment." We presume that jurors are "able to understand and correlate instructions and are further presumed to have followed the court's instructions. [Citation.]" (*Sanchez*, *supra*, 26 Cal.4th at p. 852.) Therefore, we are not convinced by defendant's argument that trial court abused its discretion by failing to admonish the jury to disregard the penalty information in exhibits 4, 5, and 6 when the court responded to jury question No. 2.

Having found no merit in defendant's contentions regarding the trial court's responses to jury note No. 1 and jury note No. 2, we also find no merit in defendant's ineffective assistance of counsel claim for failure to object to the trial court's responses to the jury notes.

### C. *Evidentiary Error: Admission of Sex Offender Parole Conditions*

Defendant contends that admission of the evidence of the parole conditions that prohibited him from any contact with minors and with females between the ages of 12 and 18 deprived him of his constitutional right to due process. Specifically, defendant contends that evidence that he had violated his parole conditions was inadmissible as bad

17

character evidence under Evidence Code sections 1101, subdivision (b), 1102, and 1108, and the evidentiary error was prejudicial and requires reversal of the judgment.

### 1. Proceedings Below

During motions in limine, defense counsel moved to exclude evidence that defendant was in violation of his parole conditions on the grounds that the evidence was not relevant to the charged offenses and the potential prejudice was obvious. The trial court denied the motion, finding that the parole "conditions are relevant to the issue of intent, and it's a question for the jury as to how they're going to evaluate that evidence accordingly. [¶] And I should also note that with respect to [Evidence Code section] 352 factors and any prejudice, the [Evidence Code section] 1108 evidence is already coming in. So that is minimized." The court also ordered counsel to meet and confer with regard to any redactions to the documentary evidence of defendant's parole conditions.

During the trial, the prosecutor requested that certified documents from the Department of Corrections that stated defendant's parole conditions with respect to children be admitted into evidence. Defense counsel objected on the ground that the evidence of defendant's parole conditions should be excluded under Evidence Code section 352. The prosecutor responded that defendant's parole conditions were relevant to show defendant's intent. The trial court found that the parole conditions were "probative with respect to the [defendant's] mental state" and admitted into evidence a certified copy of defendant's parole conditions.

### 2. Analysis

At the outset, we consider whether defendant has forfeited his claim on appeal that the documentary evidence of his parole conditions was inadmissible as bad character evidence under Evidence Code sections 1101, subdivision (b), 1102, and 1108, because he failed to state these statutory grounds for his objection during the proceedings below.

### *Evidence Code sections 1101, subdivision (b), 1102, and 1108*

The California Supreme Court has instructed that " '[w]hen an objection is made to proposed evidence, the specific ground of the objection must be stated. The appellate court's review of the trial court's admission of evidence is then limited to the stated ground for the objection. (Evid. Code, § 353.)' [Citation.] 'What is important is that the objection fairly inform the trial court, as well as the party offering the evidence, of the specific reason or reasons the objecting party believes the evidence should be excluded, so the party offering the evidence can respond appropriately and the court can make a fully informed ruling. If the court overrules the objection, the objecting party may argue on appeal that the evidence should have been excluded for the reason asserted at trial, but it may not argue on appeal that the court should have excluded the evidence for a reason different from the one stated at trial. A party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct.' [Citation.]" (*People v. Abel* (2012) 53 Cal.4th 891, 924 (*Abel*).) Accordingly, where the defendant had failed to object at trial that the evidence of his interest in Satanism was bad character evidence that was inadmissible under Evidence Code section 1101, that claim of evidentiary error was forfeited on appeal. (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1208.)

In the present case, the record reflects that defense counsel objected to the admission of the evidence of defendant's parole conditions on the sole ground that admission would violate Evidence Code section 352. When defense counsel objected during the trial, defense counsel stated, "I do wish to maintain my objection based on [Evidence Code section] 352 discussed in limine." The trial court then asked defense counsel, "So no further objections other than what was articulated during the in limines?" Defense counsel replied, "It's [Evidence Code section] 352." Defense counsel did not object that the evidence of the parole conditions was inadmissible under Evidence Code sections 1101, 1102 or 1108, and he has therefore forfeited that claim of evidentiary error on appeal. (See *Abel*, *supra*, 53 Cal.4th at p. 924.)

19

## *Evidence Code section 352*

Since defendant's stated ground for his objection to the admission of the evidence of his parole conditions was Evidence Code section 352, and he argues on appeal that the evidence was inflammatory and therefore unduly prejudicial, we will consider whether the trial court abused its discretion under Evidence Code section 352.

The trial court's discretion "extends to evidentiary rulings made pursuant to Evidence Code section 352. [Citation.]" (*People v. Tully* (2012) 54 Cal.4th 952, 1010 (*Tully*).) That section provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

"For purposes of Evidence Code section 352, evidence is considered unduly prejudicial if it tends to evoke an emotional bias against the defendant as an individual and has a negligible bearing on the issues. [Citation.] Put another way, evidence should be excluded ' " 'when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose.' [Citation.]" [Citation.]' [Citation.]" (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1091-1092 (*Mendoza*).)

" 'A trial court's exercise of discretion in admitting or rejecting evidence pursuant to Evidence Code section 352 "will not be disturbed on appeal unless there is a manifest abuse of that discretion resulting in a miscarriage of justice." [Citation.]' [Citation.]" (*People v. Thomas* (2011) 51 Cal.4th 449, 485.)

The People argue that the evidence of defendant's parole conditions prohibiting him from having contact with children was relevant to the issue of intent and was substantially more probative than prejudicial. We agree.

20

" ' "Only relevant evidence is admissible (Evid. Code, § 350; [citations]), and, except as otherwise provided by statute, all relevant evidence is admissible (Evid. Code, § 351; see also Cal. Const., art. I, § 28, subd. (d) . . .)." [Citation.] "Relevant evidence is defined in Evidence Code section 210 as evidence 'having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.' The test of relevance is whether the evidence tends 'logically, naturally, and by reasonable inference' to establish material facts such as identity, intent, or motive. [Citations.]" [Citation.]' " (*Tully*, *supra*, 54 Cal.4th at p. 1010.)

Both of the charged offenses in this case have a sexual intent element. Section 288, subdivision (a) (charged in count 1) is violated when the defendant touches an underage child with the specific intent "of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." (§ 288, subd. (a); *People v. Martinez* (1995) 11 Cal.4th 434, 444 (*Martinez*).) Section 647.6 (charged in count 2) is violated when defendant's conduct in annoying or molesting a child is " ' "motivated by an unnatural or abnormal sexual interest" ' in the victim [citations]." (*Lopez*, *supra*, 19 Cal.4th at p. 289; see also *People v. Shaw* (2009) 177 Cal.App.4th 92, 103-104 [" 'Although no specific intent is prescribed as an element of this particular offense, a reading of the section as a whole in the light of the evident purpose of this and similar legislation enacted in this state indicates that the acts forbidden are those motivated by an unnatural or abnormal sexual interest or intent with respect to children.' [Citation.]".])

At the time of defendant's contacts with AL., a 12-year-old girl, his sex offender parole conditions included a no-contact provision that (1) prohibited contact with anyone under the age of 18; (2) prohibited contact with females between the ages of 12 and 18 years; (3) required defendant to immediately inform his parole agent "regarding any contact with a minor, whether it is 'accidental' or not;" and (4) prohibited loitering within 100 yards of the perimeter of places where children congregate. Defendant's contacts with AL. were obviously in violation of his sex offender parole conditions, and it could

21

be reasonably inferred from his violations that defendant had the sexual intent required for the section 288, subdivision (a) offense and the section 647.6 offense. (See *Tully*, *supra*, 54 Cal.4th at p. 1010; see also *Mendoza, supra,* 52 Cal.4th at p. 1091 [evidence of defendant's parole status and the consequences for violating conditions of parole was highly probative of his mental state and motive].)

Moreover, the evidence of defendant's sex offender parole conditions was not unduly prejudicial in light of the other trial evidence that had been admitted with regard to defendant's prior sexual offenses. Evidence Code section 1108 evidence regarding defendant's propensity to commit sexual offenses with children had been presented to the jury through the testimony of S. Doe and A. Doe, and court records of defendant's prior convictions for child molestation had also been admitted. Consequently, it is unlikely that the jury's emotions would have been inflamed by the additional evidence of defendant's sex offender parole conditions or that the jury would have used that evidence for an illegitimate purpose. (See *Mendoza, supra,* 52 Cal.4th at pp. 1091-1092.)

The decision on which defendant relies for a contrary conclusion, *People v. McFarland* (2000) 78 Cal.App.4th 489 (*McFarland*), is distinguishable and therefore not persuasive. In *McFarland*, the issue was whether Evidence Code section 1108 allows a psychiatrist to give an expert opinion about the defendant's sexual proclivities during the prosecution's case-in-chief. (*Id.* at p. 491.) The psychiatrist had not limited his testimony to specific acts under Evidence Code sections 1108 and 1101, subdivision (b), and had offered an expert opinion on the ultimate issue of whether the defendant had an unnatural or abnormal sexual interest in the child when he touched her. The appellate court determined that the psychiatrist's testimony constituted inadmissible character evidence under Evidence Code section 1102. (*Id*. at p. 495.) Since the present case does not involve expert testimony on the issue of defendant's sexual interest in AL., the decision in *McFarland* is inapplicable.

We therefore determine that the trial court did not abuse its discretion under Evidence Code section 352 in admitting the evidence of defendant's sex offender parole conditions.

**D.** *Instructional Error:  Elements of Section 288, subdivision (a) Offense*

Defendant contends that the trial court committed instructional error by giving former CALCRIM No. 1110, which he argues misstated the law on the elements of the section 288, subdivision (a) offense.  Defendant also contends that he may raise these claims of instructional error on appeal in the absence of an objection below because the error affects his substantial rights.  The People do not argue that these claims of instructional error were forfeited.  We will therefore proceed to consider the merits of defendant's claims.

### 1.  Proceedings Below

The trial court instructed the jury pursuant to former CALCRIM No. 1110[3] as follows:  "The defendant is charged in count one with committing a lewd or lascivious act on a child under the age of 14 years, in violation of Penal Code section 288(A).  To prove that the defendant is guilty of this crime, the People must prove that:  [¶]  One, the defendant willfully touched any part of a child's body either on the bare skin or through the clothing; [¶] two, the defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child; [¶] and [¶] three, the child was under the age of 14 years at the time of the act.  [¶] *The touching need not be done in a lewd or sexual manner.*  [¶]  Someone commits an act willfully when he or she does it willingly or on purpose.  It is not required that he or she intend to break the law, hurt someone else, or gain any advantage.  [¶]  Actually arousing,

---

[3] Effective February 2013, the Advisory Committee on Criminal Jury Instructions deleted the sentence "[t]he touching need not be done in a lewd or sexual manner" from CALCRIM No. 1110.  (Judicial Counsel of Cal. Crim. Jury Instns., CALCRIM No. 1110 (February 2013 ed.).)

23

appealing to, or gratifying the lust, passions, or sexual desires of the perpetrator or the child is not required. [¶] It is not a defense that the child may have consented to the act." (Italics added.)

### 2. Analysis

The standard of review for a claim of instructional error with respect to the elements of an offense is de novo. (*People v. Berryman* (1993) 6 Cal.4th 1048, 1089 (*Berryman*), overruled on another point by *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.) "[T]he question is one of law, involving as it does the determination of the applicable legal principles [citation]." (*Berryman, supra,* at p. 1089.)

Defendant contends the trial court misdirected the jury on two elements of the section 288, subdivision (a) offense. First, defendant asserts that giving the sentence in former CALCRIM No. 1110 that reads, "[t]he touching need not be done in a lewd or sexual manner" was error because the jury could have convicted him for touching that was not committed with a sexual intent.

The People correctly point out that the California Supreme Court in *Martinez, supra,* 11 Cal.4th 434 addressed an argument similar to defendant's first claim of misdirection. In *Martinez*, the claim of instructional error concerned instructions that described a lewd or lascivious act under section 288, subdivision (a) "as 'any touching' of the victim committed 'with the [requisite] specific intent.'" (*Id.* at p. 440.) Finding the instructions proper, the court "reject[ed] defendant's suggestion that no crime occurred because neither victim was touched in an inherently lewd manner." (*Id.* at p. 442.)

The *Martinez* court further stated that "the courts have long indicated that section 288 prohibits *all* forms of sexually motivated contact with an underage child. Indeed, the 'gist' of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the offending act. [Citation.] '. . . If [the] intent of the act, *although it may have the outward appearance of innocence*, is to arouse . . . the lust, the

24

passion or the sexual desire of the perpetrator [or the child,] it stands condemned by the statute . . . .' [Citation.]" (*Martinez*, *supra*, 11 Cal.4th at p. 444.) Thus, "section 288 is violated by 'any touching' of an underage child accomplished with the intent of arousing the sexual desires of either the perpetrator or the child." (*Id*. at p. 452; see also *People v. Sigala* (2011) 191 Cal.App.4th 695, 700 [instruction that " 'touching need not be done in a lewd or sexual manner' " in former CALCRIM No. 1110 is a correct statement of the law under *Martinez*].)

Guided by the decision in *Martinez*, we determine that the sentence in former CALCRIM No. 1110 that is challenged by defendant does not constitute misdirection of the jury with regard to an element of the section 288, subdivision (a) offense. As given, former CALCRIM No. 1110 properly instructed the jury that the touching element of the offense could be satisfied by any touching of the child victim. (*Martinez*, *supra*, 11 Cal.4th at p. 444.) The decision in *People v. Cuellar* (2012) 208 Cal.App.4th 1067 (*Cuellar*), on which defendant relies, does not persuade us otherwise.

In *Cuellar*, the appellate court considered the same instructional language that is challenged in the present case ("the 'touching need not be done in a lewd or sexual manner' "). (*Cuellar, supra,* 208 Cal.App.4th at p. 1071.) Although the court found the challenged language to be arguably confusing, the court concluded that the instruction did not constitute prejudicial error where, as here, the prosecutor did not argue that the defendant was guilty even if his touching of the child victim was innocent. (*Id*. at pp. 1070-1071.)

We also find no merit in defendant's second claim of instructional error based on misdirection of the jury. Defendant asserts that former CALCRIM No. 1110 did not inform the jury that a conviction of violating section 288, subdivision (a) requires the defendant to have a present sexual intent at the time of the touching.

The People respond that when taken as a whole, it is not reasonably likely that the jury understood the jury instructions on the section 288, subdivision (a) offense to mean

25

that the intent element could be satisfied by a finding that defendant's intent was to obtain delayed or future sexual gratification.

In *Martinez*, the California Supreme Court stated that "[i]n all cases arising under [section 288], the People are required to prove that the defendant touched the child in order to obtain immediate sexual gratification. . . . [¶] . . . The trier of fact must find a union of act and sexual intent [citation] and such intent must be inferred from all the circumstances beyond a reasonable doubt." (*Martinez*, *supra*, 11 Cal.4th at p. 452.)

Having reviewed the jury instructions in their entirety, we are not convinced that the jury was misdirected on the specific intent element of the section 288, subdivision (a) offense. The jury was instructed that "[t]he crimes charged in this case require proof of the union, or joint operation, of act and wrongful intent. [¶] For you to find a person guilty of the crime of lewd or lascivious act on a child under 14, as charged in count one, that person must not only intentionally commit the prohibited act, but must do so with a specific intent. The act and the specific intent required are explained in the instructions for that crime." The jury was then instructed under former CALCRIM No. 1110 that defendant could not be found guilty of violating section 288, subdivision (a) unless "the defendant committed the act *with the intent* of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child." (Italics added.)

Based on our independent review of these instructions, we believe the jury was not erroneously instructed that the requisite intent for the section 288, subdivision (a) offense need not be a present sexual intent. We reiterate the rule that we presume that jurors are "able to understand and correlate instructions and are further presumed to have followed the court's instructions. [Citation.]" (*Sanchez*, *supra*, 26 Cal.4th at p. 852.) Moreover, defendant has provided no authority for the proposition that the jury instructions on the specific intent element of the section 288, subdivision (a) offense must be amplified with language expressly stating that the requisite intent is a "present intent."

26

For these reasons, we find no merit in defendant's contention that the jury was misdirected on two elements of the section 288, subdivision (a) offense by the giving of former CALCRIM No. 1110, and we also find no merit in defendant's claim of ineffective assistance of counsel based on failure to object.

### E. *Instructional Error: Limited Purpose Instruction*

Defendant contends that the omission of the limited purpose language from CALCRIM No. 1191 constitutes prejudicial error because the jury was not instructed that the evidence of prior sexual offenses that was admitted under Evidence Code section 1108 may not be used beyond its limited purpose.

#### 1. Proceedings Below

The trial court instructed the jury pursuant to CALCRIM No. 1191 as follows:

"The People presented evidence that the defendant committed the crime of lewd or lascivious act on a child under 14, in violation of Penal Code section 288(A), lewd or lascivious act on a 14- or 15-year-old child in violation of Penal Code section 288(C), and unlawful sexual intercourse with a minor in violation of Penal Code section 261.5 that were not charged in this case. These crimes are defined for you in these instructions. [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. [¶] If the People have not met this burden of proof, you must disregard the evidence entirely. [¶] If you decide that the defendant committed the uncharged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit the offense alleged in counts one and two, as charged here. *If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to*

27

*consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the crimes charged in counts one and two. The People must still prove each charge beyond a reasonable doubt."* (Italics added.)

The trial court also generally instructed the jury regarding evidence admitted for a limited purpose: "During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that limited purpose and for no other."

After the jury informed the trial court during deliberations that it was not able to reach a verdict on count 1, a juror asked the following question:

"JUROR NO. 7: It might be helpful if you could give us some—I don't know if it's further instruction or re-clarify instruction about the role of prior convictions. We heard testimony from prior victims. How much role does that play in our decision on this case?

"THE COURT: Okay. So the jury instruction you want to look at is . . . [CALCRIM No.] 1191. And that's the one that tells you how you can use and consider the evidence regarding uncharged acts. And that sets out the parameters. [¶] And, you know, just be mindful of the fact that those uncharged acts are just one factor. You need to consider the People still need to prove the elements beyond a reasonable doubt. [¶] So, you have that jury instruction. And then we have defined the uncharged acts for you. There is a different burden of proof for the People as to those uncharged acts. So, that's a preponderance of the evidence.

"JUROR NO. 7: Wait, wait, wait. The uncharged acts?

"THE COURT: We are talking about the acts that relate to [S. Doe, A. Doe, and J. Doe].

"JUROR NO. 7: I see.

"THE COURT: Those are the uncharged acts.

"JUROR NO. 7: Right.

"THE COURT: The only acts in this case, the alleged acts, are as to [AL].

28

"JUROR NO. 7: Right.

"THE COURT: So, it's CAL-CRIM [No.] 1191 that tells you what you can do.

"JUROR NO. 7: That role that plays.

"THE COURT: Exactly. And what you can use that for.

"JUROR NO. 7: Thank you.

"THE COURT: Okay. And that's about all I can give you on that. [¶] And I can tell you that that's an issue that juries often struggle with."

## 2. Analysis

The trial court's instruction pursuant to CALCRIM No. 1191 did not include an instruction based on the bracketed sentence "[Do not consider this evidence for any other purpose [except for the limited purpose of <insert other permitted purpose, e.g., determining the defendant's credibility>].]" Defendant contends that this omission constitutes prejudicial error because it "allowed the jurors to use the prior acts evidence in an unlimited way and violated [defendant's] Sixth and Fourteenth [A]mendment rights to have the jury determine that the 'actual element[s]' of the charged crime had been proven."

However, the bench note for CALCRIM No. 1191 states: "Give the bracketed sentence that begins with 'Do not consider' on request." (Judicial Council of Cal., Crim. Jury Instns. (2014) Bench Notes to CALCRIM No. 1191.) We first consider whether defendant has forfeited this claim since defense counsel did not request that a limited purpose instruction based on the bracketed sentence that begins with "Do not consider this evidence for any other purpose . . ." be included when CALCRIM No. 1191 was given.

Evidence Code section 355 provides: "When evidence is admissible as to one party or for one purpose and is inadmissible as to another party or for another purpose, the court upon request shall restrict the evidence to its proper scope and instruct the jury accordingly." Pursuant to Evidence Code section 355, the California Supreme Court has

" 'consistently held that where . . . a defendant fails to request an instruction, a trial court "generally [has] no duty to instruct on the limited admissibility of evidence. [Citation.]" [Citations.]' [Citation.]" (*People v. Maciel* (2013) 57 Cal.4th 482, 529.) "Hence, failure to request such an instruction in the trial court forfeits a direct appellate claim that it should have been given. [Citation.]" (*People v. Boyer* (2006) 38 Cal.4th 412, 465, overruled on another ground in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1.)

Defendant argues his appellate challenge is not forfeited because the jury's request for clarification (regarding the role that the prior convictions and the testimony of the prior victims should have in their deliberations) may constitute a defendant's request for a limiting instruction under Evidence Code section 355. We need not decide whether this proposition is correct or whether defendant has forfeited this claim of instructional error, since for the following reasons we determine that defendant's claim lacks merit.

An error in failing to instruct the jury on how to use the Evidence Code section 1108 propensity evidence is reviewed under the harmless error standard stated in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). (*People v. Falsetta* (1999) 21 Cal.4th 903, 925.) Under the *Watson* standard, an error is harmless if it is not reasonably probable that a result more favorable to the defendant would have been reached in the absence of the error. (*Watson*, *supra*, at p. 837.)

For several reasons, we determine that even assuming that the omission of an express limited purpose instruction based on the bracketed language "Do not consider this evidence for any other purpose . . ." in CALCRIM No. 1191 constitutes instructional error, the error was harmless.

First, " '[i]t is well established in California that the correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction. [Citations.] "[T]he fact that the necessary elements of a jury charge are to be found in two instructions rather than in one instruction does not, in itself, make the charge prejudicial."

30

[Citation.] "The absence of an essential element in one instruction may be supplied by another or cured in light of the instructions as a whole." [Citation.]' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 328.)

Here, the record reflects that the instructions (1) expressly instructed the jury that a conclusion that defendant committed the uncharged offenses was only one factor to consider along with all the other evidence and was not sufficient by itself to prove that the defendant is guilty of the crimes charged in counts one and two; (2) expressly instructed the jury that evidence admitted for a limited purpose could be considered "only for that limited purpose and for no other;" and (3) reminded the jury during deliberations that the evidence admitted regarding the uncharged acts and the prior victims was "just one factor" and the People needed to prove the elements of the charged crimes beyond a reasonable doubt. Taken as a whole, the jury instructions adequately informed the jury that the evidence admitted under Evidence Code section 1108 with respect to the prior convictions and prior victims was admitted for a limited purpose.

Second, "[t]he reviewing court also must consider the arguments of counsel in assessing the probable impact of the instruction on the jury. [Citations.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1202.) As the People note, during closing argument defense counsel emphasized that the evidence admitted under Evidence Code section 1108 could only be used for a limited purpose.

Defense counsel argued the following to the jury during closing argument: "Now, you will be instructed on how to use . . . this prior conduct, these prior convictions. Okay? The law tells you what you can, what you may use it for. You are not required to, but you can't use it for any other reason. [¶] 'You may, but are not required to, conclude from the evidence that the defendant was disposed or inclined to commit sexual offenses'. . . 'and based on that decision conclude that he was likely to, or did, that he did commit a sex offense.' [¶] Okay. Number one, as [the prosecutor] has already pointed out, certainly not sufficient on its own to prove him guilty. [¶] And number two, this

31

does not in any way relieve the state of its burden to prove him guilty beyond a reasonable doubt. . . . [¶] Now, why do you need to be told this? . . . [B]ecause there is going to be a very strong temptation to use this evidence, to use these priors for an impermissible or illegal purpose. [¶] Okay. Impermissible uses would be anything that plays on your emotion. Anything that would make you feel sympathy, for example, for the two women that testified. To make you hate or despise [defendant]. This cannot be used as evidence that he's a bad character, that he's a bad person, to make you want to punish him, or say he's a bad man, or to punish him further for things that he has already done. [¶] And if your fellow jurors are bringing up any kind of impermissible purpose, there needs to be a correction."

Having reviewed the jury instructions as a whole, as well as defense counsel's closing argument regarding the limited purpose for which the jury could use the Evidence Code section 1108 propensity evidence, we determine that even assuming the omission of an express limited purpose instruction pursuant to CALCRIM No. 1191 was error, the error was harmless because it is not reasonably probable that a result more favorable to defendant would have been reached in the absence of the error. (See *Watson*, *supra*, 46 Cal.2d at p. 837.) Since we have found no merit in defendant's contention of instructional error, we also reject defendant's claim of ineffective assistance of counsel based on failure to object.

## F. *Instructional Error: Unanimity*

Defendant contends that the trial court committed reversible error by improperly instructing the jury on the requirement of unanimity with an instruction based on CALCRIM No. 3501. According to defendant, the trial court should have given the unanimity instruction set forth in CALCRIM No. 3500.

### 1. Proceedings Below

The trial court instructed the jury regarding unanimity with the following instruction based on CALCRIM No. 3501: "The defendant is charged with having

committed the crimes of lewd or lascivious act on a child under 14, in violation of Penal Code section 288(a) and annoying or molesting a child under the age of 18, in violation of Penal Code section 647.6 (c)(2) in counts one and two, sometime during the period of July 1, 2011, and September 1, 2011.  [¶]  The People have presented evidence of more than one act to prove that the defendant committed these offenses.  You must not find the defendant guilty unless:  [¶]  One, you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed for each offense:  [¶] or [¶] two, you all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period and have proved that the defendant committed at least the number of offenses alleged."

### 2.  Applicable Law

"In a criminal case, a jury verdict must be unanimous.  . . .  Additionally, the jury must agree unanimously the defendant is guilty of a *specific* crime.  [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act.  [Citations.]"  (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*).)

"This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.'  [Citation.]  . . .  'The [unanimity] instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count.'  [Citation.]"  (*Russo, supra,* 25 Cal.4th at p. 1132.)

The two unanimity instructions at issue in this case are the pattern jury instructions CALCRIM No. 3500 and CALCRIM No. 3501.

33

CALCRIM No. 3500 states: "The defendant is charged with *<insert description of alleged offense>* [in Count ___ ] [sometime during the period of ___ to ___ ]. [¶] The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed."

CALCRIM No. 3501 states: "The defendant is charged with *<insert description[s] of alleged offense[s]>* [in Count[s] ___ ] sometime during the period of ___ to ___. [¶] The People have presented evidence of more than one act to prove that the defendant committed (this/these) offense[s]. You must not find the defendant guilty unless: [¶] 1. You all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed [for each offense]; [¶] OR [¶] 2. You all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period [and have proved that the defendant committed at least the number of offenses charged]."

"CALCRIM No. 3501 is an alternative instruction to CALCRIM No. 3500." (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 556.) " 'In a case in which the evidence indicates the jurors might disagree as to the particular act defendant committed, the standard unanimity instruction [(e.g., CALCRIM 3500)] should be given. [Citation.] But when there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed all of them, the jury should be given a modified unanimity instruction [(e.g., CALCRIM 3501)] which, in addition to allowing a conviction if the jurors unanimously agree on specific acts, also allows a conviction if the jury unanimously agrees the defendant committed all the acts described by the victim.' " (*Id.* at pp. 555-556, quoting *People v. Jones* (1990) 51 Cal.3d 294, 321-322 (*Jones*).)

34

### 3. Analysis

On appeal, "[w]e must consider whether it is reasonably likely that the trial court's instructions caused the jury to misapply the law. [Citations.] '[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.' [Citations]." (*People v. Carrington* (2009) 47 Cal.4th 145, 192.)

Defendant argues that giving CALCRIM No. 3501 was error in the present case because the instruction allowed the jury "to find unanimity without agreeing that any one act sufficiently proved the charged offense."

The People disagree. They explain that CALCRIM No. 3501 was properly given because "[t]o reach unanimity, the jury was required to either unanimously agree [defendant] was guilty of committing the same specific act underlying each charge, or agree that every alleged act was proven, thus satisfactorily proving each count."

Having reviewed the instruction given by the trial court pursuant to CALCRIM No. 3501, we are not convinced that it is reasonably likely that the jury would interpret the instruction to allow them to find unanimity without agreeing that any one act proved the charged offenses. The jury was expressly instructed that "You must not find the defendant guilty unless: [¶] . . . [Y]ou all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed for each offense." (See, e.g., *People v. Milosavljevic* (2010) 183 Cal.App.4th 640, 648-650 [jurors presumably understood from CALCRIM No. 3501 that they were required to all agree on an act the defendant committed for each offense to find him guilty on each offense].)

We are also not convinced of the impropriety of CALCRIM No. 3501's alternative unanimity instruction: "You must not find the defendant guilty unless: [¶] . . . [¶] . . . [Y]ou all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period and have proved that the defendant

committed at least the number of offenses alleged." The alternative instruction properly informs the jury that " 'the prosecution will have proven beyond a reasonable doubt that the defendant committed a specific act, for if the jury believes the defendant committed all the acts it necessarily believes he committed each specific act [citations].' " (*Jones, supra*, 51 Cal.3d at p. 322.)

Accordingly, we find no merit in defendant's claim of instructional error based on the giving of an instruction pursuant to CALCRIM No. 3501, and we also find no merit in defendant's claim of ineffective assistance of counsel based on failure to object.

## G. *Instructional Error: Deadlocked Jury*

Defendant contends that the trial court's supplemental instructions to the deadlocked jury were improperly coercive and included an improper *Allen* charge in violation of his constitutional rights.

### 1. Proceedings Below

After the jury had begun deliberations, the court convened in the presence of the jury regarding a jury note. The following colloquy then occurred.

"THE COURT: Juror Number Seven is the foreperson. [¶] So, we have received a note saying that the jury is not able to reach an agreement as to count one. Count one point two. So, let's just say count one. [¶] Now, I want to ask you some questions, and then I'm going to let anybody else augment the foreperson's answers. [¶] So, if you have been unable to reach a verdict as to count one, have you been able to reach a unanimous verdict as to count two?

"JUROR NO. 7: Yes.

"THE COURT: Okay. And when I ask you these questions, it's very important to answer them in a very neutral way and not give us any indication about how you are leaning, as to whether it's conviction or acquittal. [¶] Okay. So we have a decision as to count two. Did you reach that decision yesterday or this morning? Yesterday?

"JUROR NO. 7: I believe it was yesterday.

36

"THE COURT: Okay. So, in terms of count one, have you been taking ballots?

"JUROR NO. 7: We have taken a ballot.

"THE COURT: A ballot, okay. [¶] And can you tell me what the breakdown is, without telling us which way?

"JUROR NO. 7: Right. It's eleven to one.

"THE COURT: It's eleven to one. . . . Even if you've only taken one ballot, has that basically been the split since you began deliberating as to count one?

"JUROR NO. 7: Yes.

"THE COURT: Okay. So, the one juror, would you say that the eleven-to-one break is caused because of a juror's unwillingness to deliberate or just a disagreement?

"JUROR NO. 7: I would call it a disagreement. [¶] . . . [¶]

"THE COURT: As long as we don't have a lack of willingness to deliberate. Sometimes you'll just have somebody sitting there with their arms crossed. I actually had one that wouldn't get off their I-Phone. . . .

"JUROR NO. 7: We've been in a lot of conversation.

"THE COURT: A lot of conversation. Good. A lot of dialogue?

"JUROR NO. 7: I believe so.

"THE COURT: Okay. So, I know this was a very short trial, and you've almost been deliberating as long as the evidentiary portion of the trial. What I am going to ask you to do is, I'm going to ask you to give us the rest of the afternoon — are you willing to do that — and try to come to a consensus. [¶] What I would like to do is, I do have a jury instruction that is used in a situation like this, and I have personally had some success with this jury instruction. So, it gives you a different perspective of how to . . .

"JUROR NO. 7: Approach it.

"THE COURT: [¶] . . . [¶] So, the instruction I'm going to read to you is CAL-CRIM 3551, and it's taken from a case that I actually would read from before it became a jury instruction. And it's very well thought out. Let me read it to you:

37

"Sometimes juries that have had difficulty reaching a verdict are able to resume deliberations and successfully reach a verdict. Please consider the following suggestions. [¶] Do not hesitate to reexamine your views. Fair and effective jury deliberations require a frank and forthright exchange of views. [¶] Each of you must decide the case for yourself and form your individual opinion after you have fully and completely considered all of the evidence with your fellow jurors. It is your duty as jurors to deliberate with the goal of reaching a verdict if you can do so without surrendering your individual judgment. [¶] And I think that's the key phrase.

"JUROR NO. 7: Could you repeat that, please?

"THE COURT: It is your duty as jurors to deliberate with the goal of reaching a verdict if you can do so without surrendering your individual judgment. [¶] So, essentially, we don't want somebody just to change their mind just to get it over with, or just to please somebody, or not change their minds for the same reason. So we don't want anyone to surrender their individual judgment. [¶] Do not change your position just because it differs from that from other jurors or just because you or others want to reach a verdict. Both the People and the Defendant are entitled to the individual judgment of each juror. [¶] It is up to you to decide how to conduct your deliberations. You may want to consider new approaches in order to get a fresh perspective. [¶] Let me know whether I can do anything to help you further, such as give additional instructions or clarify instructions I have already given you. [¶] Please continue your deliberations at this time. And if you wish to communicate with me further, please do so in writing.

"And adding, I know that this instruction talks about fresh approaches, let me make a couple of suggestions of fresh approaches that you might want to take. [¶] For example, you may wish to consider having different jurors lead the discussions for a period of time, or you may wish to experiment with reverse role-playing by having those on one side of an issue present and argue the other side's position, and vice versa. And

38

this might enable you to better understand the other positions. [¶] So, I ask you, you've already been so generous with your time, I ask you to give me, say, two and a half more hours. So if you don't have a verdict on count one at 4:30, I'm not going to ask you to come back on Monday. Just give us some more time."

The jurors continued their deliberations and returned a verdict later the same day that the supplemental instructions had been given.

### 2. Applicable Law

"The trial court's authority to give supplemental jury instructions to a deadlocked jury in a criminal case derives from Penal Code section 1140, which provides, 'Except as provided by law, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, unless by consent of both parties, entered upon the minutes, or unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree.' " (*People v. Whaley* (2007) 152 Cal.App.4th 968, 979 (*Whaley*).)

"The trial court is therefore required to determine in its 'sound discretion' whether there is a reasonable probability of agreement by the jury. [Citation.] However, '[t]he court must exercise its power . . . without coercion of the jury, so as to avoid displacing the jury's independent judgment "in favor of considerations of compromise and expediency." [Citation.]' [Citations.]" (*Whaley*, *supra*, 152 Cal.App.4th at p. 980.)

In *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335 (*Bryant*), the California Supreme Court recently addressed the issue of whether the trial court's actions and instructions to a deadlocked jury were improperly coercive. Referring to its prior decision in *People v. Gainer* (1977) 19 Cal.3d 835 (*Gainer*), the court "explained that 'coercive' actions are those involving 'a judicial attempt to inject illegitimate considerations into the jury debates [and] . . . appeal to dissenting jurors to abandon their own independent judgment of the case against the accused,' by placing 'excessive

39

pressure on the dissenting jurors to acquiesce in a verdict.' [Citation.] In assessing the effect of the trial court's actions, the question is 'whether the instructions tend[ed] to impose such pressure on jurors to reach a verdict that we are uncertain of the accuracy and integrity of the jury's stated conclusion. This determination of whether the instructions "operate[d] to displace the independent judgment of the jury in favor of considerations of compromise and expediency" [citation] is perhaps best characterized as requiring a generalized assessment of the potential effect of a given instruction on the fact finding process, rather than as an attempted inquiry into the actual volitional quality of a particular jury verdict.' [Citation.]" (*Bryant*, *supra*, at pp. 460-461.)

"In *Gainer*, our Supreme Court addressed the instruction commonly called the ' "*Allen* charge" ' or the ' "dynamite charge," ' which was approved by the United States Supreme Court in [*Allen*, *supra*, 164 U.S. 492] and subsequently adopted in many states. [Citation.] The California Supreme Court found that the 'first and most questionable feature' of the *Allen* charge was 'the discriminatory admonition directed to minority jurors to rethink their position in light of the majority's views.' [Citation.]" (*Whaley*, *supra*, 152 Cal.App.4th at p. 980, fns. omitted.)

Our Supreme Court has reaffirmed the rule in *Gainer* that where an erroneous instruction has been given to a deadlocked jury, "reversal is appropriate only if the reviewing court, considering 'all the circumstances under which the charge was given,' finds it 'reasonably probable' the defendant would have obtained a more favorable result absent the error. [Citation.]" (*People v. Valdez* (2012) 55 Cal.4th 82, 164.)

### 3. Analysis

According to defendant, the trial court's supplemental instructions in the present case constituted an improper *Allen* charge because the court singled out the dissenting juror who had caused the 11-to-1 division. Defendant also argues that the supplemental instructions were coercive because they set a deadline for jury deliberation; urged that a verdict be reached; failed to instruct the jury that the duties and fair trial safeguards stated

40

in the pre-deliberation instruction CALCRIM No. 3550 remained in effect; and personally vouched for CALCRIM No. 3551, with the result that the jury's independent judgment was displaced.

The People contend that since defense counsel did not object to the trial court's supplemental instructions this claim of instructional error has been waived. Alternatively, the People argue that the record shows that the trial court did not coerce the jury into reaching a verdict.

Our review of the trial court's supplemental instructions to the deadlocked jury shows no improper coercion or *Allen* charge. To begin with, there is nothing in the record to show that the court instructed the minority jurors " 'to rethink their position in light of the majority's views.' [Citation.]" (*Whaley*, *supra*, 152 Cal.App.4th at p. 980.) The court's inquiry regarding the jury's 11-to-1 division was not improper. In *Bryant*, our Supreme Court stated that "[a] court must be permitted to undertake some inquiry about the state of deliberations to determine if, despite the report of a stalemate, there is a reasonable possibility of future agreement. We have consistently rejected the federal rule that inquiries into the numerical division of the jurors are inherently coercive. [Citations.]" (*Bryant*, *supra*, 60 Cal.4th at p. 462.)

Further, defendant errs in stating that the trial court coerced the jury by setting a deadline for jury deliberations and expressing the court's personal opinion that the case was uncomplicated and only a few hours were needed for deliberations. The trial court stated: "So, I know this was a very short trial, and you've almost been deliberating as long as the evidentiary portion of the trial. What I am going to ask you to do is, I'm going to ask you to give us the rest of the afternoon — are you willing to do that — and try to come to a consensus." The court also stated: "So, I ask you, you've already been so generous with your time, I ask you to give me, say, two and a half more hours. So if you don't have a verdict on count one at 4:30, I'm not going to ask you to come back on Monday. Just give us some more time." Far from coercing the jury to reach a verdict,

41

the trial court's request for continued deliberations, as in *Bryant*, "explicitly left open the possibility that agreement might not be reached. . . . In essence, [the court] did not accept the jury's position that it truly was deadlocked at that time." (*Bryant*, *supra*, 60 Cal.4th at p. 462.)

We also find nothing in the trial court's supplemental instructions to indicate that the instructions displaced the jurors' independent judgment. As we have noted, the *Bryant* court stated that the " 'determination of whether the instructions "operate[d] to displace the independent judgment of the jury in favor of considerations of compromise and expediency" [citation] is perhaps best characterized as requiring a generalized assessment of the potential effect of a given instruction on the fact finding process, rather than as an attempted inquiry into the actual volitional quality of a particular jury verdict.' [Citation.]" (*Bryant*, *supra*, 60 Cal.4th at p. 461.)

Here, the court's supplemental instructions emphasized that the jurors were to use their independent judgment. The court instructed the jurors that "[e]ach of you must decide the case for yourself and form your individual opinion after you have fully and completely considered all of the evidence with your fellow jurors. It is your duty as jurors to deliberate with the goal of reaching a verdict if you can do so without surrendering your individual judgment. [¶] And I think that's the key phrase." We fail to see any potential for these instructions to have the effect of displacing the jury's independent judgment for considerations of compromise and expediency.

Finally, we understand defendant to argue that the trial court erred in failing to instruct the jury that the duties and fair trial safeguards stated in the pre-deliberation instruction CALCRIM No. 3550 remained in effect, in order to avoid displacing the jury's independent judgment by instructing them that they must reach a verdict. This argument is unconvincing. We reiterate that the jury was instructed that, "It is your duty as jurors to deliberate with the goal of reaching a verdict if you can do so without surrendering your individual judgment." The jury was also instructed: "So, essentially,

42

we don't want somebody just to change their mind just to get it over with, or just to please somebody, or not change their minds for the same reason. So we don't want anyone to surrender their individual judgment."

For these reasons, we determine that the trial court's supplemental instructions to the deadlocked jury did not constitute improper jury coercion or an improper *Allen* charge. Defendant's claim of ineffective assistance of counsel based on failure to object therefore fails on appeal.

## H. *Prosecutorial Misconduct*

Defendant contends that several comments made by the prosecutor during closing argument constitute prejudicial misconduct. We will provide an overview of the applicable law, followed by a discussion of each claim of prosecutorial misconduct.

### 1. Applicable Law

" ' "The standards governing review of misconduct claims are settled. 'A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the federal Constitution when they infect the trial with such " 'unfairness as to make the resulting conviction a denial of due process.' " [Citations.] Under state law, a prosecutor who uses such methods commits misconduct even when those actions do not result in a fundamentally unfair trial.' [Citation.] . . . When a claim of misconduct is based on the prosecutor's comments before the jury, ' "the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." ' [Citation.]" [Citation.]' [Citation.]" (*Bryant*, *supra*, 60 Cal.4th at p. 427.)

Our Supreme Court also determined in *Bryant* that the defendant had forfeited his claims of prosecutorial misconduct during closing argument by failing to object and to request that the jury be admonished. (*Bryant*, *supra*, 60 Cal.4th at p. 371.) The court stated: "Defendants' failure to object prevented the prosecution from developing the

record to refute these claims and prevented the trial court from taking steps to avoid or remedy any prejudice. We therefore decline to address them." (*Id*. at pp. 426-427.)

In the present case, defendant asserts that defense counsel objected to the prosecutorial misconduct during closing argument on count one and that any other objections would have been futile. As we will discuss, even assuming that defendant's claims of prosecutorial misconduct were not forfeited, we would find them to be without merit.

### 2. Analysis

#### *Grooming—Count 1*

Defendant argues that the prosecutor committed misconduct by arguing that the evidence of grooming was sufficient for a conviction on count 1 of violating section 288, subdivision (a).

We have reviewed the portions of the prosecutor's closing and rebuttal arguments that defendant has cited on appeal as support for his argument that the prosecutor committed misconduct by arguing that evidence of grooming was sufficient for a conviction on count 1. Our review does not reveal any misconduct.

To the contrary, during closing argument the prosecutor stated the three elements that must be proven for a section 288, subdivision (a) conviction and then argued the specific evidence for each element. For example, with regard to the second element of touching the child victim with sexual intent, the prosecutor argued: "Let's go on to the second touch; the touch on the thigh. There he is. He's bought her the pair of shoes that no one wanted, and the father expressly told him not to buy. And there he is in the kitchen with her. And she's putting on the shoes. And he comes up, and he places his, hand on her thigh. . . . [¶] . . . [T]here was no reason to touch her. It was his conscious decision to reach out and put his hand on her. Why? Because he likes to touch children. It excites him."

Moreover, our review shows that the prosecutor referenced the expert testimony on grooming when arguing with respect to count 2, which alleged the section 647.6 offense of annoying or molesting a child under the age of 18, not count 1.  Based on our review of the prosecutor's argument, we see no reasonable likelihood that the jury construed or applied any of the prosecutor's comments on grooming " ' " ' "in an objectionable fashion." '  [Citation.]"  [Citation.]'  [Citation.]" (*Bryant*, *supra*, 60 Cal.4th at p. 427.)

### *Wolf in Sheep's Clothing*

Defendant also contends that the prosecutor committed misconduct during closing argument by telling the jury, in defendant's words, "that the prior three victims were molested due to a lack of vigilance by their caretakers and that it was necessary for this jury to send a message to the 'wolf in sheep's clothing' before he could make [AL.] his fourth victim."  Defendant asserts that these comments preyed upon the jury's sympathy and fear for the welfare of children, in an effort to override the jury's consideration of the evidence.

At the beginning of closing argument, the prosecutor stated:  "Once [defendant] had gained a position of trust and friendship with the father, he would go on to molest the children; oftentimes in their own homes, and in some cases even in their own beds.  The age old proverb:  He was the wolf dressed in sheep's clothing."  During rebuttal, the prosecutor argued that "[t]he sheep's clothing, they have been removed.  What you have sitting over there, in no uncertain terms, is a wolf; a wolf that likes children.  He likes to touch children.  No more."

The rules governing the scope of the prosecutor's argument do not prohibit the argument challenged in this case.  " ' "A prosecutor is given wide latitude during argument.  The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom. [Citations.]  It is also clear that counsel during summation may state matters not in

45

evidence, but which are common knowledge or are illustrations drawn from common experience, history or literature." [Citation.]' " (*People v. Ward* (2005) 36 Cal.4th 186, 215.)

The California Supreme Court has also stated that "we do not condone the use of opprobrious terms in argument, but such epithets are not necessarily misconduct when they are reasonably warranted by the evidence. [Citations.]" (*People v. McDermott* (2002) 28 Cal.4th 946, 1002 (*McDermott*).) In *McDermott*, the prosecutor's comments in closing argument described the defendant "as 'a mutation of a human being,' a 'wolf in sheep's clothing,' a 'traitor,' a person who 'stalked people like animals,' and someone who had 'resigned from the human race.' " (*Id.* at p. 1003.) The court rejected the defendant's claim of prosecutorial misconduct, finding that when the comments were considered in the context of the defendant's planning and execution of the murder, the references were "within the permissible bounds of argument, and in any event would not have had such an impact 'as to make it likely the jury's decision was rooted in passion rather than evidence.' [Citation.]" (*Ibid.*)

We reach a similar conclusion in the present case. The "wolf in sheep's clothing" comments were made with respect to the evidence showing defendant's pattern of finding his child victims by becoming active in a church, befriending a fellow church member who had a child who was a potential victim, and frequently visiting the home of the victim as an ostensible member of the family. In this context, the "wolf in sheep's clothing" comments were warranted by the evidence and were unlikely to make the jury's decision rooted in sympathy and fear for children rather than the evidence.

### *Unanimity Requirement for Count 2*

Defendant contends that the prosecutor committed misconduct by arguing that there was no unanimity requirement as to count 2 (annoying or molesting a child in violation of § 647.6) because no touching was required. The People respond that even if

46

the argument was "potentially unclear," the prosecutor correctly stated the unanimity requirement for count 2.

During rebuttal, the prosecutor argued as follows regarding the unanimity requirement: "[Y]ou have to agree as jurors which act occurred and agree on that act. As to count one, . . . [y]ou all have to agree, 'hey, it was the arm caress, that's what convinced me,' or 'it was the hand on leg that convinced me,' or you can all agree, 'hey, it was both of them.' But you can't have a six say, 'for me, it was the arm,' and six saying, 'it was the leg.' You do have to agree as to that count. [¶] As to count two, there is no unanimity requirement, because no touching is required. I wanted to clear that up. I do not need to prove to you that he touched her. Of course, you can consider the touches, but we don't even need that for that particular crime. What we need is a course of conduct that a normal person would have been irritated or offended by. [¶] And [defense counsel] says, 'Well, you know, I'm arguing a course of conduct because one thing and one thing alone wasn't sufficient.' I beg to differ. Strongly differ. [¶] What would one person, a normal person, have been irritated by a single thing? [¶] . . . [¶] [Y]ou don't even have to look at the entire [course] of conduct for count two. The simple act of him offering to get a puppy, it is, in and of itself, enough to hold this man accountable."

It is well established that "[a]lthough counsel have 'broad discretion in discussing the legal and factual merits of a case [citation], it is improper to misstate the law. [Citation.]' [Citation.]" (*People v. Mendoza* (2007) 42 Cal.4th 686, 702.) "However, arguments of counsel 'generally carry less weight with a jury than do instructions from the court. The former are usually billed in advance to the jury as matters of argument, not evidence [citation], and are likely viewed as the statements of advocates; the latter, we have often recognized, are viewed as definitive and binding statements of the law.' [Citation.]" (*Id.* at p. 703.)

Thus, when the prosecutor's "argument runs counter to instructions given a jury, we will ordinarily conclude that the jury followed the latter and disregarded the former,

47

for '[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade.' [Citation.]" (*People v. Osband* (1996) 13 Cal.4th 622, 717.)

Here, our review of the prosecutor's argument shows that the rebuttal argument on the unanimity requirement for count 2 was not a model of clarity. Even assuming that the lack of clarity in the argument could be construed as a misstatement of the law regarding the unanimity requirement, we find the error harmless. As discussed *infra*, the trial court's instructions on unanimity correctly instructed the jury pursuant to CALCRIM No. 3501 that the unanimity requirement applied to both counts one and two. We presume that the jury followed the court's instructions on unanimity and disregarded the prosecutor's argument to the extent it was unclear or an incorrect statement of the law.

### *Normal Person Element of Count 2*

Defendant contends that the prosecutor committed misconduct during rebuttal by arguing that B. Doe's "subjective opinion met the 'normal person'/offensive acts element" of the section 647.6 offense "and that the jurors did not need to set aside knowledge of [defendant's] priors to assess the sufficiency of that element."

We have reviewed the portions of the prosecutor's rebuttal argument cited by defendant in support of this contention of prosecutorial misconduct. We disagree that the prosecutor argued that B. Doe's subjective opinion regarding defendant's conduct was sufficient to prove the section 647.6 element that the defendant's conduct would unhesitatingly irritate or disturb a normal person, contrary to the rule that "we employ an *objective* test not dependent on whether the child was in fact irritated or disturbed. [Citations.]" (*Lopez, supra*, 19 Cal.4th at p. 290.)

Instead, the prosecutor argued during rebuttal as follows regarding the normal person element: "What would one person, a normal person, have been irritated by a single thing? A normal person is going to be really, really offended by a 49-year-old man buying a child a pair of shoes when the parent has said, 'No.' There is one act that's

48

really, really going to irritate most normal people.  That at by itself.  [¶]  . . .  [T]he puppy incident . . . that one incident in and of itself, without even knowing anything about his history, put aside his parole conditions, put aside all of that, just offering to share a puppy with a child, in and of itself, without asking the parents' permission, [is] really, really, really going to offend a normal person."

We therefore find that no prosecutorial misconduct occurred during rebuttal argument on the normal person element of count 2, and consequently reject defendant's claim of ineffective assistance of counsel for failure to object.

## I. *Cumulative Error*

Finally, defendant contends that the cumulative effect of the errors in this case warrants reversal.  The California Supreme Court has instructed that "a series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error."  (*People v. Hill* (1998) 17 Cal.4th 800, 844.)  In the present case, we have determined that defendant's claims of trial errors lack merit.  We therefore find no merit in defendant's contention of cumulative error.

## IV.  DISPOSITION

The judgment is affirmed.

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

MIHARA, J.